UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CAN MAN CARTING, LLC and ANDRIS KURINS,

                        *Plaintiffs*,

       -- against --                      Docket No. _____

JOSEPH SPIEZIO, III, LOUISE SPIEZIO, LIANNA      **COMPLAINT**
SPIEZIO, JACQUELINE SPIEZIO, JOSEPH
SPIEZIO IV, GLORIA SPIEZIO, SPIEZIO FAMILY
HOLDINGS, LLC, and PINNACLE EQUITY
GROUP, LLC,

                        *Defendants*.
------------------------------------------------------------------X

        Plaintiffs Can Man Carting, LLC and Andris Kurins, by their attorneys, Judd Burstein,

P.C., as and for their Complaint herein, allege as follows:

## JURISDICTION AND VENUE

        1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(a)(1), in that this is a civil action between citizens of different States in which the amount

in controversy exceeds $75,000, exclusive of interest and costs.

        2.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

        3.     Plaintiff Can Man Carting, LLC ("CMC") is a limited liability company

organized under the laws of the State of Connecticut.  All of its members are citizens of the State

of Connecticut.

        4.     Plaintiff Andris Kurins ("Kurins") is a citizen of the State of Connecticut.

        5.     On information and belief, Defendant Joseph Spiezio III ("Spiezio") is a citizen of

the State of New York or the State of Florida.  He resides principally in New York State.

6.      On information and belief, Defendant Louise Spiezio is a citizen of the State of New York or the State of Florida.  She resides principally in New York State.

7.      On information and belief, Defendant Lianna Spiezio is a citizen of the State of New York.

8.      On information and belief, Defendant Jacqueline Spiezio is a citizen of the State of New York.

9.      On information and belief, Defendant Joseph Spiezio IV is a citizen of the State of New York.

10.      On information and belief, Defendant Gloria Spiezio is a citizen of the State of New York.

11.      Defendant Spiezio Family Holdings, LLC ("SFH") is a limited liability company organized under the laws of the State of New York.  On information and belief, it is solely owned, directly or indirectly, by Spiezio, Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, and Joseph Spiezio IV.

12.      Defendant Pinnacle Equity Group, LLC ("Pinnacle") is a limited liability company organized under the law of the State of Louisiana.  On information and belief, it is solely owned, directly or indirectly, by Spiezio, Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, and Joseph Spiezio IV.  According to the website of the Louisiana Secretary of State, Spiezio is Pinnacle's sole Officer.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13.      On August 1, 2014, CMC and Kurins commenced an action against Spiezio, Can Man Sanitation, Inc. and JLS Waste Services of Nevada, Corp., entitled *Can Man Carting,*

*LLC and Andris Kurins v. Joseph Spiezio, Can Man Sanitation, Inc., and JLS Waste Services of Nevada, Corp.*, Index No. 61783/2014 (Sup. Ct. Westchester Cty.) ("CMS Action").

14.     On May 13, 2019, Hon. Terry Jane Ruderman issued a Trial Decision and Order in the CMS Action (annexed hereto, and incorporated by reference herein, as Exhibit A), finding, *inter alia*, that:

a.     Prior to February of 2013, CMC was in the business of providing waste management services in the State of Connecticut;

b.     In early February 2013, CMC transferred all of its assets to JLS Waste Services of Nevada Corp. ("JLS"), a company wholly owned by Spiezio, in return for a purchase price of $2,350,000.00, payable as follows: (a) $1,348,554.17 plus interest to Kurins, (b) a $600,000 down payment, a portion of which was to be paid to CMC's creditors, (c) $408,137.51 to CMC, and (d) $593,308.72 paid directly to CMC's creditors;

c.     Sometime thereafter in February of 2013, JLS, at Spiezio's direction, transferred the CMC assets purchased by JLS to Can Man Sanitation, Inc. ("CMS"), a company also wholly owned by Spiezio.  CMS provided no consideration for the assets transferred to it by JLS;

d.     As of April 15, 2014, JLS owed $1,176,912.05 to Kurins and $408,137.51 to CMC;

e.     JLS breached its payment obligations to Plaintiff by stopping payment on a check to Kurins in April of 2014; and

f.     Spiezio is the alter ego of both JLS and CMS, as well as Pinnacle and SFH.

15.     Plaintiffs have never been paid the monies due to them from the sale of CMC's assets to JLS.

16.     Commencing June 30, 2014 through December 31, 2017, CMS paid $548,866.02 in "shareholder distributions" to or for the benefit of Spiezio.  The dates and payees of these distributions are shown on the highlighted entries from CMS's General Ledger (annexed hereto, and incorporated by reference herein, as Exhibit B).

17.     Commencing April 20, 2014 through November 20, 2017, CMS paid Spiezio's mother, Defendant Gloria Spiezio, $112,175.73 in purported loan repayments.  The dates of these payments are shown on the highlighted entries in CMS's General Ledger (annexed hereto, and incorporated by reference herein, as Exhibit C).  Neither CMS's banking records nor its General Ledger reflect a loan from Gloria Spiezio to CMS.

18.     According to CMS's General Ledger, on July 28, 2015, CMS paid SFH $132,194.88 in repayment of a loan purportedly made to CMS by **Pinnacle**.  Spiezio has testified under oath that all of Pinnacle's and SFH's financial decisions were made by Defendants Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, and Joseph Spiezio IV such that, based upon Spiezio's testimony, these four defendants directed CMS to repay SFH for monies purportedly loaned to CMS by Pinnacle.

19.     According CMS's General Ledger, CMS purportedly owed SFH $86,516.33 in loans made to it as of April 15, 2014.  As shown by the highlighted entries from CMS's General Ledger (annexed hereto, and incorporated by reference herein, as Exhibit D), from April 16, 2014 through on April 3, 2018, CMS paid $1,370,583.53 to or for the benefit of SFH in repayment of purported loans from SFH.  However, during that same period of time, CMS's General Ledger reflects only $360,995.48 in deposits of money from SFH into CMS's accounts.

4

Spiezio has testified under oath that all of Pinnacle's and SFH's financial decisions were made by Defendants Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, and Joseph Spiezio IV such that, based upon Spiezio's testimony, these four defendants directed CMS to "repay" SFH for monies never loaned by SFH.

## FIRST CLAIM FOR RELIEF

### (Claim Under New York Debtor and Creditor Law § 273 Against Spiezio)

20.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

21.     No later than April 15, 2014, by reason of (a) JLS's breach of its obligation to pay Plaintiffs for CMC's Assets, and (b) CMS's liability for JLS's obligation both as the recipient of JLS's fraudulent conveyance of CMC's assets and as JLS's alter ego, CMS was insolvent as that term is defined by New York Debtor and Creditor Law ("DCL") § 271.

22.     Spiezio is collaterally estopped from disputing the fact that he is the alter ego of JLS, CMS, SFH and Pinnacle.

23.     CMS was either insolvent at the time that each of the conveyances, totaling $2,163,820.16, described above in Paragraphs 15-18 ("the Fraudulent Conveyances") were made, or was rendered insolvent thereby.

24.      None of the Fraudulent Conveyances were made in return for fair consideration as that term is defined by DCL § 272.

25.     Plaintiffs were creditors, as that term is defined by DCL § 270, at the time each of the Fraudulent Conveyances were made, and each such conveyance was therefore constructively fraudulent as to them.

26.     Plaintiffs are therefore entitled to have those conveyances set aside and paid to them by Spiezio in amounts proportionate to the monies owed to them as found by the Court in the CMS Action.

## SECOND CLAIM FOR RELIEF

### (Claim Under DCL § 274 Against Spiezio)

27.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

28.     Each of the Fraudulent Conveyances left CMS with unreasonably small capital.

29.     Plaintiffs are therefore entitled to have those conveyances set aside and returned to them by Spiezio in amounts proportionate to the monies owed to them as found by the Court in the CMS Action.

## THIRD CLAIM FOR RELIEF

### (Claim Under DCL § 273 Against Gloria Spiezio)

30.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

31.     The $112,175.73 in purported loan repayments by CMS to Gloria Spiezio were not made in return for fair consideration.

32.     Plaintiffs are therefore entitled to have those conveyances set aside and returned to them by Gloria Spiezio in amounts proportionate to the monies owed to them as found by the Court in the CMS Action.

## FOURTH CLAIM FOR RELIEF

### (Claim Under DCL § 274 Against Gloria Spiezio)

33.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

34.     Each of the purported loan repayments by CMS to Gloria Spiezio left CMS with unreasonably small capital.

35.     Plaintiffs are therefore entitled to have those conveyances set aside and returned to them by Gloria Spiezio in amounts proportionate to the monies owed to them as found by the Court in the CMS Action.

## FIFTH CLAIM FOR RELIEF

### (Claim Under DCL § 273 Against SFH)

36.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

37.     None of the $1,502,778.41 in purported loan repayments by CMS to SFH as alleged above in Paragraphs 17-18 were made in return for fair consideration even though CMS's books and records show that some monies were transferred to CMS by SFH.

38.     Plaintiffs are therefore entitled to have those loan repayments set aside and returned to them by SFH in amounts proportionate to the monies owed to them as found by the Court in the CMS Action.

## SIXTH CLAIM FOR RELIEF

### (Claim Under DCL § 274 Against SFH)

39.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

40.     Each of the purported loan repayments by CMS to Gloria Spiezio left CMS with unreasonably small capital.

41.     Plaintiffs are therefore entitled to have those loan repayments set aside and returned to them by SFH in amounts proportionate to the monies owed to them as found by the Court in the CMS Action.

**SEVENTH CLAIM FOR RELIEF**

**(Claim Under DCL § 276 Against Louise Spiezio, Jacqueline Spiezio, Lianna Spiezio, Joseph Spiezio IV, SFH and Pinnacle)**

42.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

43.     On information and belief, SFH and Pinnacle are the primary sources of the money which funds the lifestyles of Spiezio, Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, and Joseph Spiezio IV.

44.     According to Spiezio's sworn testimony, Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, and Joseph Spiezio IV were the final decision-makers with regard to all financial matters concerning SFH and Pinnacle during the time period during which the Fraudulent Conveyances were made.

45.     If Spiezio testified truthfully on this issue, then, on information and belief, Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio and Joseph Spiezio IV were fully aware that monies were being diverted from CMS to SFH as part of a scheme to hinder, delay or defraud Plaintiffs and other creditors of Spiezio, and actually intended that the transfers of those monies accomplish that purpose.

46.     By reason thereof, Plaintiffs are entitled to a money judgment against Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, Joseph Spiezio IV, SFH and Pinnacle, jointly and severally, in an amount equal to the conveyances detailed above in Paragraphs 17 and 18 above, to be divided in proportion to the monies owed to them as found by the Court in the CMS Action.

### EIGHTH CLAIM FOR RELIEF

### (Claim Under DCL § 276 Against Spiezio)

47.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

48.     At a minimum, Spiezio directed the conveyances detailed above in Paragraphs 15 and 16 with the actual intent to hinder, delay and defraud Plaintiffs and other creditors.

49.     In addition, if Spiezio falsely testified such that Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, Joseph Spiezio IV do not have any management role or control over the affairs of SFH and/or Pinnacle, then Spiezio also directed the Fraudulent Conveyances alleged in Paragraphs 17 and 18 above with the actual intent to hinder, delay and defraud Plaintiffs and other creditors.

50.     By reason thereof, Plaintiffs are entitled to a money judgment against Spiezio in an amount determined by the Court to be divided in proportion to the monies owed to them as found by the Court in the CMS Action.

51.     In addition, because Spiezio's conduct was so outrageous, wanton, malicious and willful, the Court should award Plaintiffs $10 million in punitive damages.

## NINTH CLAIM FOR RELIEF

### (Claim Under DCL § 276-a Against All Defendants)

52.     Plaintiffs repeat and reallege all of the allegations set forth above as if fully restated herein.

53.     In the event that any Defendant herein is found liable to Plaintiffs pursuant to DCL § 276, Plaintiffs are entitled to an award against such Defendant for their reasonable attorney fees.

**WHEREFORE,** Plaintiffs demand judgment as follows:

A.     On Plaintiffs' First and Second Claims for Relief, an order and judgment against Defendant Joseph Spiezio III setting aside the Fraudulent Conveyances;

B.     On Plaintiffs' Third and Fourth Claims for Relief, an order and judgment against Defendant Gloria Spiezio, setting aside the purported loan repayments as fraudulent conveyances;

C.     On Plaintiffs' Fifth and Sixth Claims for Relief, an order and judgment against Spiezio Family Holdings, LLC setting aside the purported loan repayments as fraudulent conveyances;

D.     On Plaintiffs' Seventh Claim for Relief, a money judgment against Defendants Louise Spiezio, Lianna Spiezio, Jacqueline Spiezio, Joseph Spiezio IV, Spiezio Family Holdings, LLC, and Pinnacle Equity Group, LLC, jointly and severally, in an amount equal to the conveyances detailed above in Paragraphs 18 and 19 above, to be divided in proportion to the monies owed to them as found by the Court in the CMS Action;

E.      On Plaintiffs' Eighth Claim for Relief, a money judgment against Defendant Joseph Spiezio III in an amount to be determined at trial, with $10 million in punitive damages;

F.      On Plaintiffs' Ninth Claim for Relief, a money judgment against all Defendants who are found liable under DCL § 276 for Plaintiffs' reasonable attorneys' fees;

G.      An award of prejudgment interest; and

H.      An order and judgment granting such other and further relief as deemed just and proper by the Court.

Dated: New York, New York
          May 22, 2019

Yours, etc.,

JUDD BURSTEIN, P.C.
*Attorneys for Plaintiffs*

By:      /s/ Judd Burstein
          Judd Burstein (JB9585)
          Peter B. Schalk (PS8257)
          5 Columbus Circle., Suite 1501
          New York, NY 10019
          Tel.: (212) 974-2400
          Fax: (212) 974-2944
          Email: jburstein@burlaw.com
                   pschalk@burlaw.com